## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN  DIVISION

| | |
|---|---|
| Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth,<br>     Plaintiffs,<br><br>v.<br><br>Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, EPD Investment Leasing Co., LLC, a California limited liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katherine Werner, True Position Technologies, Inc., a California corporation, Ice Skating Enterprises, Inc., a California corporation, S.C. Club, L.P., a California limited partnership.<br><br>     Defendants. | Case No. |

## COMPLAINT

Plaintiffs, Arthur Huerth and Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth, through their attorneys McKenna Storer, allege the following cause of action against Defendants, Jerrold Pressman, EPD Investment Co., LLC, a California limited liability company, ("EPD"), EPD Investment Leasing Co., LLC, a California limited liability company, EPD Group, Theodore Jonavic, Ruben Moreno, Katy Werner,  True Position Technologies, Inc., a California corporation,  Ice Skating Enterprises, Inc., a California corporation, and S.C. Club, L.P.,  a California limited partnership.

## JURISDICTION

1.      Jurisdiction for this Complaint is based upon federal question (28 U.S.C. Sec. 1331) and diversity of citizenship (28 U.S.C. Sec. 1332.)

2.      Count I arises under the  federal civil R.I.C.O. statute, 18 U.S.C. §1961-68; and Counts II and III  arise under the federal securities laws, 15 U.S.C. sec. 78a et seq.

3.      In the alternative, jurisdiction is based upon diversity of citizenship. Plaintiffs Arthur and Joan Huerth are citizens of Florida; Plaintiff Leslie Huerth is a citizen of Illinois; Plaintiff AJ Partners is a partnership with all partners citizens of Florida; all  individual Defendants are citizens of California; all Defendant entities have their principal place of business in California, all parties in S.C. Club, L.P. have their principal place of business in and/or are citizens of California. The amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. Section 1332.

4.      Supplemental jurisdiction extends to all state claims.

## PARTIES

5.      Plaintiff Arthur Huerth ("Art") is an individual who, at relevant times when the contract for a loan arose, resided in Spring Grove, McHenry County, Illinois. Currently, Arthur resides in North Fort Myers, Florida.

6.      Plaintiff Joan Huerth ("Joan") is an individual who, at relevant times when the contract for a loan arose, resided in Spring Grove, McHenry County, Illinois. Currently, Joan resides in North Fort Myers, Florida.

7.      Arthur and Joan Huerth are married to one another and are the parents of Wayne Huerth and Leslie Huerth.

8.      "Huerth Financial Leasing" is an assumed name registered  to Arthur Huerth and Joan Huerth in Florida.

9.      Plaintiff, "AJ Partners" is a partnership with Art and Joan as its general partners.

10.     Plaintiff, Leslie Huerth ("Leslie"), is an individual residing in McHenry County, Illinois.

11.     Defendant, Jerrold Pressman ("Pressman"), is an individual residing in California.

12.     Defendant, EPD Investment Co., LLC,  ("EPD")  is a California limited liability company.

13.     EPD Investment Leasing Co., LLC, is a California limited liability company and a successor to EPD Investment Co., LLC.

14.     EPD Group, on information and belief, is an assumed name used by EPD and EPD Investment Leasing Co., LLC.

15.     Defendant, Theodore Jonavic ("Jonavic") is an individual residing in California and a putative licensed certified public accountant and registered securities broker and representative.

16.     Defendant True Position Technologies, Inc., is a California corporation with its principal place of business in California.

17.     Defendant Ice Skating Enterprises, Inc., is a California corporation with its principal place of business in California.

18.     Defendant S.C. Club, L.P., is a California limited partnership with its principal place of business in California. All partners of S.C. Club, L.P. have their principal place of business in and/or are citizens of California.

19.     Defendant Ruben Moreno is an individual residing in California.

20.     Defendant Katherine Werner is an individual residing in California and upon information and belief is a licensed attorney.

### FACTS COMMON TO ALL COUNTS

**a.     The Solicitation**

21.     During the years 2000 through 2007, Defendant Pressman, on behalf of EPD, solicited Art and Joan Huerth, and their daughter Leslie Huerth (collectively "Huerths") to loan monies to entities owned or controlled by Pressman, including EPD, in return for a promised stream of interest payments.

22.     Pressman represented that he was a taxation expert, that he had a keen interest in finding ways to legally avoid the payment of federal income tax, and that he would provide expert tax accounting advice and services to the Huerths if they participated in his program of loans and investments.

23.     Specifically, Pressman told Art and Joan that they could use their own accountant, or if they agreed, he would have his accountant prepare all their tax returns at Pressman's own expense. He also agreed to pay the accountant's fees for any audit.

24.     Pressman's original solicitation of Art and Joan occurred in the year 2000 when he offered to buy their home in Wisconsin. See Exhibit A. Art and Joan declined to sell their home to Pressman.

25.     Pressman continued regularly, sometimes weekly, to place telephone calls to Art and Joan in Illinois between 2000 and 2004 to solicit Art and Joan's financial participation in various deals through EPD.

26.     Art, Joan and Leslie were brought into this lending program through the solicitation and advice of financial advisor Jerrold Pressman.

27.     Prior to making their initial investment in the form of a loan of money, and continuing through the final investment, Pressman gave Art, Joan and Leslie no written materials describing the investment or its risks.

28.     Pressman promised above-market returns on the investments of at least 12%, and repeatedly assured Art and Joan that the principal amounts invested were safe, could easily be repaid upon demand, and were not at risk.

29.     Pressman assured Art and Joan that loans to EPD as an investment were "recession proof."

30.     Pressman encouraged a trusting relationship between himself and the Huerths. He called the group of investors a "small investment family."

31.     On more than one occasion, Pressman encouraged Art and Joan to take out home equity loans on properties they owned in Illinois and Florida and invest the loan proceeds in EPD.

32.     Pressman represented that the interest EPD would pay would exceed the mortgage rate of interest on a home equity loan.

33.     Pressman encouraged Art and Joan to invest their entire savings, their home equity, and, after Art's retirement, their IRA funds, with EPD.

**b.     The Investment.**

34.     Beginning in August, 2004, Art and Joan Huerth invested by loaning $1,181,291.00 to EPD by both wires of funds and by checks sent through the mails. The money came from Art and Joan's savings, their IRA account, and several home equity loans.  Promissory Demand Notes executed by Pressman were sent through the mail.

35.     In 2006, Leslie  loaned $10,000.00 to EPD by a check sent through the mails.  A Promissory Demand Note executed by Pressman was sent to her through the mail.

36.     According to Pressman, the investments would be used to fund private and public companies, and to finance aerospace and other equipment leasing and acquisition operations.

37.     In return for the investments of money, Art , Joan  and Leslie received demand promissory notes from EPD Investments signed by Jerrold Pressman, which were delivered by mail from EPD in the state of Illinois. (Copies of the notes are attached as group Exhibit B)

38.     There are about 50 other investors in EPD including at least six other Illinois residents at the time of investing who made similar investments.

39.     Pressman induced Art and Joan to move their IRA retirement account to Fiserv,  a self-directed retirement account. Pressman instructed Art and Joan to direct Fiserv to invest the retirement funds in demand notes with EPD. The Fiserv account was later transferred to Polycomp, another self-directed retirement account.

40.     The loans to EPD paid to Art and Joan monthly interest income, by EPD checks sent to Illinois, approximating a ten to twelve percent return between 2004 and May, 2009.  No interest on the loans has been received by them since June 2009.

41.     The EPD loan from the funds on deposit in IRA accounts for Art and Joan with Fiserv, later Polycomp,  paid cash returns to Art and Joan, by EPD checks sent to Illinois, approximating a ten to twelve percent return between  2004 and June 2009.

42.     In June, 2005 Theodore P. Jonavic signed the Fiserv Unsecured Promissory Note Investment Authorization as Loan Servicing Agent for Art and Joan's Fiserv account.

43.     In or about spring, 2010 a Polycomp representative informed Art that EPD should not be paying cash returns directly to Art on the EPD note held by the IRA. Rather, he indicated those returns should be paid to the IRA account.  In response, Ruben Moreno ("Moreno"),  financial officer for EPD, told Art that EPD would "do whatever it wanted."

44.     The loan to EPD earned Leslie  interest income approximating a  ten to twelve percent return between 2004 and June, 2010.  All interest earned by Leslie was to be reinvested in the EPD loan account and added to her balance on deposit with EPD.

45.     On information and belief, EPD and Pressman represented to Leslie that she was rolling over accrued earnings by sending her periodic financial reports when the earnings did not exist.

**c.      The Safety of the Funds.**

46.      At all times and as recently as June 2010, Art, Joan and Leslie have been assured by Pressman and other EPD employees on dozens of occasions that their money was safe.

47.      Moreno has repeatedly assured Art, Joan and Leslie that their money was safe.

48.      Moreno has prepared periodic accountings and reconciliations for investors including Huerths on their EPD accounts from 2004 through the present.

49.      Huerths reasonably relied upon the assurances given to them by Moreno because of his hands-on involvement with the financial details of EPD.

50.      Katherine Werner, ("Werner") director of business affairs for Broadway Entertainment, a Pressman owned, related business of EPD, has repeatedly assured Art, Joan and Leslie that their money was safe. Katherine represented herself as a spokesperson for Jerry and as having knowledge of the EPD situation and assured Art and Joan in January, 2010 that she was 95% sure of a payout of funds in mid-January.

51.      Huerths reasonably relied upon the assurances given to them by Warner because of her position at EPD, her status as an attorney and her purported access to pertinent information on EPD.

**d.      The Entities and the Leases.**

52.      Without Art and Joan's informed consent, Pressman used Art and Joan's names to register for an assumed name in Florida – "Huerth Financial Leasing."

53.      Without Art and Joan's informed consent, Pressman created a partnership called "AJ Partners" with Art and Joan as general partners in April 2007.

The application for tax identification number was submitted to the IRS by Jonavic without Art or Joan's prior knowledge or consent.

54.     The Florida "dba" Huerth Financial Leasing was used as the lessor on equipment leases in California, to lessees unknown to the Huerths. The equipment leases are attached hereto as Exhibit C.

55.     Four equipment leases dated August 8, 2004 were signed by Art Huerth at Pressman's direction on November 13, 2004 for terms of 42 months.

56.     In Lease #L040823-HFL,  the Lessor is Huerth Financial Leasing and the lessee is True Position Technologies, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

57.     In Lease #L040823-HFL-2, the Lessor is Huerth Financial Leasing and the lessee is Ice Skating Enterprises, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

58.     In Lease #L040823-HFL-3, the Lessor is Huerth Financial Leasing and the lessee is S.C. Club, L.P. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

59.     In Lease #L040823-HFL-4, the Lessor is Huerth Financial Leasing and the lessee is True Position Technologies, Inc. which is owned, in whole or in part, on information and belief, by Pressman or Pressman controlled entities.

60.     Each of the four leases was unconditionally guaranteed in writing by Pressman.  The guaranties are attached hereto as Exhibit D.

61.     The Guaranties each contain an option to renew the equipment lease term for an additional 42 months.

62.     According to the original terms of the equipment leases and guaranties, at the end of a lease, the equipment was or would be owned by Pressman, not the Huerths.

63.     Despite repeated requests, the Huerths have not seen the equipment, nor its list of serial numbers, nor photographs, nor any bills of sale or other title evidence.  Huerths have received no evidence that their equipment ownership interests have been protected or perfected.

64.     Pressman, aided by Jonavic, used Art and Joan to create sham businesses so they could purchase equipment with Art and Joan's funds.

65.     At all times, and despite Art and Joan's requests for return of the equipment, Pressman  retained the equipment.

**e.     The Tax Returns.**

66.     Jonavic, the accountant recommended and paid for by Pressman and EPD, prepared income tax returns for Art and Joan since Art and Joan's first investment of funds, for tax years 2004 to 2008.

67.     Jonavic never spoke telephonically with Art and Joan, his clients, about the preparation of their tax returns.

68.     Jonavic electronically filed all of Art and Joan's tax returns without giving them an opportunity to review them in advance of filing.

69.     Jonavic claimed incorrectly that Art and Joan had a "home office" for Huerth Financial Leasing on one or more of Art and Joan's income tax returns.

70.     The IRS has disputed or re-characterized certain items of income and deductions taken by Jonavic on Art and Joan's tax returns concerning Huerth Financial Leasing.

71.     To date, Art and Joan have no evidence that equipment was ever in fact purchased.

72.     The equipment leases were executed in 2004, but were presented again in a modified form to Art and Joan by Pressman and Jonavic in 2009 for signature. The key modification was that ownership of the equipment would remain in Huerth Financial Leasing at the end of the leases. On information and belief this modification was made to create a true lease which would be treated more favorably by the IRS in a pending audit. The lease guaranties were not similarly amended.

73.     Pressman told Art and Joan in 2004 that they could use any tax preparer they chose, but if they agreed to use Pressman's accountant, there would never be any charge for the accounting services.

74.     On information and belief, Jonavic prepared the tax returns for all EPD investors (numbering approximately 50) except for Leslie.

75.     During 2005 through 2010, Art and Joan posed numerous questions about their tax returns and the audit to Jonavic, but Jonavic did not return their phone calls, emails or letters.

76.     Art, Joan and Leslie never received any direct tax reporting documents, such as K-1s or 1099s until after their returns were prepared and filed by Janovic, until 2010 when a 2009 K-1 was received.

77.     When Jonavic annually mailed the completed tax returns to Art and Joan, he did not explain anything abut the preparation of the return, nor any positions taken on them.

78.     Jonavic never discussed taking deductions for a home office with Art and Joan prior to taking those deductions on their tax returns.

79.     In 2007 Art and Joan's tax returns for years 2004, 2005, and 2006 were audited. Among other things, the IRS objected to home office deductions and the characterization of passive investment losses as active.

80.     In 2009 at the conclusion of the audit, losses originally shown as active were re-characterized as passive; certain deductions for depreciation were taken off of Schedule C "Business Use of Home" and were moved to Schedule E "Rental Income." This resulted in the imposition of additional taxes, penalties and interest on Art and Joan.

81.     Art and Joan were not informed that their tax returns as originally filed contained any aggressive or risky tax positions.

82.     Art and Joan did not take any active part in the defense of the audit. At Pressman's direction, Jonavic handled all communications with the IRS.  Art and Joan provided all documentation requested by Jonavic but had no role in the defense, and have no knowledge of what representations were made on their behalf to the IRS. When they inquired about the progress of the audit, they were told by Pressman's staff that they had done nothing wrong and that everything was being taken care of.

83.     The audit ended in November 2009 with the IRS agreeing to offset a large, unrelated investment loss against the taxes and penalties resulting from the audit.

Instead of receiving a $45,629.00 refund for the unrelated loss, the Huerths received an $7,876.59 refund.

84. In a letter to Art and Joan, Jonavic said the taxpayers conceded to the IRS' position for part of the '04 and '05 matters to divert the IRS from issues pertaining to loans to their children, Wayne Huerth and Leslie Huerth.

85. There never was a true IRS issue regarding any transactions of Wayne or Leslie. The supposed threat was created by Jonavic to play on the emotions of Art and Joan, and to give a rationale for why they should pay $37,752.41 to the IRS.

86. Art and Joan suffered harm as a direct and proximate result of Pressman's and Jonavic's advice that their investment income would be offset by substantial depreciation and would be tax advantaged; and they lost the financial benefit of the refund from the unrelated investment loss.

87. Art and Joan would have pursued alternative investments with valid investment income and tax saving strategies with these monies.

88. Art, Joan and Leslie have made demands for return of the principal under the terms of the demand notes, and for interest due, and for payments due under the equipment leases, but they have not received any payments under these documents or from EPD or Jerrold Pressman since June, 2009.

89. Art and Joan have also demanded turnover of the equipment.

90. In connection with the acts, transactions and conduct alleged herein, Defendants used the means and instrumentalities of interstate commerce, including the United States mails, electronic mail and interstate telephone communications.

91.     The Huerths are among many investors (on information and belief, approximately 50 investors) who also have received demand notes for their investments, and have stopped receiving any promised return on their investment.

92.     At all times, Pressman, individually and as an agent of EPD, stood in a fiduciary relationship to Art, Joan and Leslie, with Art, Joan and Leslie reasonably reposing trust and confidence in Pressman.

93.     At all times Jonavic stood in a fiduciary relationship to Art and Joan, with Art and Joan reasonably reposing trust and confidence in Jonavic.

94.     At all times, Moreno and Werner were the agents of EPD and/or Pressman.

95.     At all times, EPD stood in a fiduciary relationship with Art, Joan and Leslie who reposed trust and confidence in EPD and its personnel.

96.     EPD Investment Leasing Co., LLC was formed by Pressman on May 18, 2010, which is the same date as a hearing was being held in the California state court in the case of Hansel v. EPD Investment Co and Jerrold Pressman, Case No. SC106151, pertaining to the Plaintiff's application for a temporary restraining order and writ of prejudgment attachment on the assets of EPD and Pressman. The Writ of Attachment was granted.

97.     The Hansel complaint alleges: her investment in EPD at Pressman's recommendation; her loss of the investment; her legal proceedings with the IRS alleging tax fraud due to unsupported positions taken by Jonavic; and EPD and Pressman's wrongful actions in creating assumed names and preparing possibly phantom equipment leases.

98.     Upon information and belief, the formation of EPD Investment Leasing Co., LLC was part of a scheme by Pressman to transfer assets and liabilities between entities and avoid creditors.

99.     Pressman and his employees have fraudulently schemed to divert the Huerths and other investors from taking any legal action by promising them payments from a variety of ventures, including:

a) Since about June, 2009 Pressman has promised that a certain bank loan would allow him to make payments to investors;

b)  Since about October, 2009 and as recently as August, 2010 Pressman described a foreign investor, from Sweden, then later from Switzerland, who was going to invest millions in EPD to avoid the payment of income taxes;

c) In January, 2010, Katherine Werner relayed information to Art from Pressman that the foreign investor's money was being transferred to their bank and it should be received within days.

d) In 2010, Art was told that it was a "done deal" that EPD would have the necessary bond to build infrastructure on lots it owned, and then such lots could be sold to satisfy investors.

e)  Pressman told Art and other investors about a pending lawsuit, *Plush Lounge Las Vegas LLC v. Lalji, et al*, Case No: CV08-8394 in the US District Court for the Central District of California, Western Division, which he claims will result in a multimillion dollar recovery, perhaps 100 million dollars for Plush Lounge.  Pressman is the owner of Plush Lounge. He

has stated he expects to recover millions and will use the proceeds to pay investors.

f) Pressman sold his residence in summer, 2010 for 7 million dollars. He promised to use the proceeds to pay investors beginning around June 26, 2010.

None of these assurances has resulted in any payment to the Huerths or, on information and belief, to any other investors.

## COUNT I

## RICO – RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT AGAINST EPD, JERROLD PRESSMAN, THEODORE JONAVIC, RUBEN MORENO AND KATHERINE WERNER BY ALL PLAINTIFFS

100. Paragraphs 1-99 of this Complaint are re-stated and re-alleged here as this paragraph 100.

101. At all relevant times there was in full force and effect a statute known as The Racketeer Influenced and Corrupt Organizations Act (RICO) which provides for a civil cause of action for acts performed as part of an ongoing criminal organization. 18 U.S.C. §1961-68. Section 1962( c) states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

102. The Defendants EPD, Pressman, Jonavic, Moreno and Werner have engaged in conduct violating the 18 U.S.C § 1962( c) in one or more of the following ways:

a.  Pressman, Jonavic, Moreno and Werner and EPD staff and employees were employed by or associated with an enterprise, EPD, which engaged in interstate commerce and conducted its affairs through a pattern of racketeering activity designed to solicit funds from individuals, preying upon them and urging them to take high-risk actions to invest, with promises of higher than market rates of return;

b.  Pressman and Jonavic created and operated businesses in the name of Art and Joan, without explaining the existence or purpose of the business or its legal or tax consequences, to allegedly purchase equipment, but taking no steps to protect Art and Joan's ownership interest in the equipment, and in fact attempting to retain ownership of the equipment at the lease's end for their own or EPD's benefit;

c.  In the alternative, if no equipment was purchased, Pressman and Jonavic misled Art and Joan about the use of the funds obtained from them, and the existence of equipment;

d.  Pressman and Jonavic represented that they could provide unique tax strategies to Art and Joan that would limit their tax liability when in fact they had no legal means of doing so;

e.  Pressman enticed Art, Joan and Leslie, directly or indirectly, to loan all of their savings, including retirement funds, to EPD, claiming that the funds were safe when in fact the

funds were not safe, and the interests of Pressman and Jonavic were not as represented;

f.    Pressman, Werner and Moreno repeatedly misled the Huerths about EPD's ability to repay loans, to pay interest, or to fund investments, and about the status of investments;

g.    Pressman had conflicts of interest in the business transactions undertaken on behalf of Art and Joan which were undisclosed, and he engaged in conduct calculated to defraud the Huerths of their money.

h.    Pressman, Jonavic, Moreno and Werner employed schemes and artifices to delay or prevent the Huerths from taking legal action against them or EPD, by describing various circumstances which would allow EPD to re-pay the Huerths without legal action.

103.    The funds received from the Huerths and other investors were, on information and belief, used to support periodic payments to earlier investors, and were never used and invested as had been represented to the new investors.

104.    The enterprise engaged in or affected interstate commerce in that EPD through Pressman solicited Art, Joan and Leslie in Illinois and Art and Joan in Florida, and on information and belief, solicited other investors in other states as well.

105.    Pressman, Jonavic, Moreno and Werner also communicated repeatedly with the Huerths throughout the years 2004 through 2009 using interstate mails, electronic mail and wires.

106.     Pressman, Moreno and EPD sent periodic written financial reports to the Huerths, which, on information and belief, did not reflect the true status of the invested money.

107.     Pressman's activities show a pattern of racketeering activity to commit fraud, including the assurance of above-market returns on investments with no disclosure of risks; the creation of assumed names and partnerships for mere investors; the recommendation of unfounded income tax positions; creating and sending to the Huerths false financial reports; and repeated assurances in 2009 and 2010 that payments to investors would resume upon the occurrence of various expectancies.

108.     Jonavic, an associate of, and advisor to, Pressman and the accountant to the Huerths, and upon information and belief, many other similarly situated EPD investors, aided and abetted Pressman in carrying out his fraud on the investors by preparing tax returns based on the fraudulent transactions carried out by Pressman and otherwise assisting him in the execution of this fraud on the noteholders who entrusted their life savings to Pressman and EPD.

109.     Moreno and Werner aided and abetted Pressman in carrying out his fraud on the investors by holding themselves out as having information about the financial condition of EPD and the likelihood of future payments to investors, and communicating such information to the Huerths and other investors.

WHEREFORE, Arthur Huerth, Joan Huerth and Leslie Huerth pray that this Court enter:

A.     Judgment in their favor and against Pressman, Jonavic, Moreno and Werner for damages exceeding $1,556,807.00;

B.      trebled damages;

C.      judgment for costs and attorneys fees; and

D.      such further relief as the court finds equitable and just..

## COUNT II

**STOCKBROKER / FINANCIAL ADVISER MISCONDUCT AGAINST JERROLD PRESSMAN BY PLAINTIFFS ARTHUR AND JOAN HUERTH**

110.    Paragraphs 1 through 109 of this Complaint are re-stated and re-alleged here as this paragraph 110.

111.    At all times herein there was in full force and effect a statute known as The Securities Act of 1933. Section 12 of the Act states:

(a) IN GENERAL.—Any person who—
(1) offers or sells a security in violation of section 5, or
(2) offers or sells a security (whether or not exempted by the provisions of section 3, other than paragraphs (2) and (14) of subsection (a) thereof), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

112.    The investments sold to Art and Joan by Pressman were securities under the terms of the securities Act of 1933 in that they included evidence of indebtedness and a certificate of interest or participation in a profit-sharing agreement and/or an investment contract.

113.     Pressman had a duty to share all material information about the investments with Art and Joan prior to their payment of any money.

114.     Pressman had a duty to disclose all material information to the Huerths, including basic information about EPD including its business plan, its management team, its proposed use of proceeds and the risks related to its business, and he was prohibited from disclosing materially false or misleading information.

115.     Pressman had a duty to fully disclose all risks associated with the investments he recommended, and to disclose any conflicts of interest that might have an effect on his recommendations.

116.     On Pressman's recommendation, Art and Joan made  investments of money in a common enterprise with the expectation of profits solely from the efforts of others.

117.     On Pressman's recommendation, Art and Joan loaned money to EPD or Pressman and received demand promissory notes.  These notes are securities and subject to the regulations governing the sale of securities.

118.     Pressman breached his duties to Art and Joan  by employing devices, schemes, and artifices to defraud by inducing Art and Joan to move their IRA accounts to a brokerage house where the monies could be invested in EPD; by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, such as one or more of the following:

     a.    the guaranty that the investments were "safe" and "recession proof";

b.      that the investments would give Art and Joan tax advantaged income;

c.      that the investments would pay a higher rate of interest than the interest paid on a home equity loan;

d.      that the funds would be used to purchase and lease equipment or fund various companies;

e.      that the funds would be re-paid on demand;

f.      that the investment was risk-free;

g.      by omitting to state material facts about the risks and legality of the investments;

h.      and otherwise misleading Art and Joan.

119.    Art and Joan trusted Pressman and reasonably relied on his professional advice in their decision to make investments in EPD.

120.    The actions of Defendant Pressman constitute securities fraud.

121.    Art and Joan have suffered damages as a direct and proximate result of their reliance on Pressman's statements and omissions, including the loss of their $1,181,291.00 principal investment, the loss of the promised return, the lost opportunity to invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with their pursuit of the refund of their money, including the costs and fees associated with this lawsuit.

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A.      Judgment in an amount in excess of $1, 556,807.00;

B. Judgment for the costs and expenses of this litigation, including attorney fees;

C. Interest from the date of filing through the date of judgment at the default rate; and

D. Such further relief as is equitable and just.

## COUNT III

### STOCKBROKER / FINANCIAL ADVISER MISCONDUCT AGAINST JERROLD PRESSMAN BY PLAINTIFF LESLIE HUERTH

122. Paragraphs 1-121 of this Complaint are re-stated and re-alleged here as this paragraph 122.

123. Pressman had a duty to share all material information about the investments with Leslie prior to her payment of any money.

124. Pressman had a duty to disclose all material information to Leslie, including basic information about EPD including its business plan, its management team, its proposed use of proceeds and the risks related to its business, and he was prohibited from disclosing materially false or misleading information.

125. Pressman had a duty to fully disclose all risks associated with the investments he recommended, and to disclose any conflicts of interest that might have an effect on his recommendations.

126. The investments sold to Leslie by Pressman were securities under the terms of the securities Act of 1933 in that they included evidence of indebtedness and a certificate of interest or participation in a profit-sharing agreement and/or an investment contract.

127.     On Pressman's recommendation, Leslie made investments of money in a common enterprise with the expectation of profits solely from the efforts of others.

128.     Pressman breached his duties to Leslie by employing devices, schemes, and artifices to defraud by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, such as one or more of the following:

  a.     the guaranty that the investments were "safe" and "recession proof";

  b.     that the investments would give Leslie tax advantaged income;

  c.     that the funds would be used to purchase and lease equipment or fund various companies;

  d.     that the funds would be re-paid on demand;

  e.     that the investment was risk-free;

  f.     by omitting to state material facts about the risks and legality of the investments;

  g.     and otherwise misleading Leslie.

129.     Leslie trusted Pressman and reasonably relied on his professional advice in her decision to make investments in EPD.

130.     The actions of Defendant Pressman constitute securities fraud.

131.     Leslie has suffered damages resulting from her reliance on Pressman's statements, including the loss of her initial $10,000.00 principal investment, the loss of the promised return which was rolled over into the investment, the lost opportunity to

invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with her pursuit of the refund of her money, including the costs and fees associated with this lawsuit.

WHEREFORE, Leslie Huerth prays that this Court enter an order granting her:

      A.    Judgment in the amount of her investment of $18,000.00;

      B.    Judgment for the costs and expenses of this litigation, including attorney fees;

      C.    Interest from the date of filing through the date of judgment at the default rate; and

      D.    Such further relief as is equitable and just.

## COUNT IV

## BREACH OF CONTRACT AGAINST EPD INVESTMENT COMPANY BY PLAINTIFFS ARTHUR HUERTH AND JOAN HUERTH

132.    Paragraphs 1-131 of this Complaint are re-stated and re-alleged here as this paragraph 132.

133.    Under the terms of the Notes, there is no stated term no other restriction on the bearer's ability to demand repayment of principal .

134.    The Note is designated as due "On Demand."

135.    The Note provides that if the bearer commences collection proceedings, EPD promises to pay such additional sums as the Court may adjudge to be reasonable attorneys fees.

136.    The amount due and owing to Art and Joan  for principal and interest as of June 30, 2010 is $1,556,807.00.

137.    Demand has been made for payment and no payment has been received. See Exhibit E.

138.    Art and Joan have fully complied with all of the requirements of the contract.  Under the terms of the Note, the Plaintiffs are entitled to attorneys fees and costs of collection.

WHEREFORE, Plaintiffs Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A.    Judgment in their favor and against Jerrold Pressman in the amount of $1,556,807.00;

B.    Judgment for additional interest and fees through the date of judgment;

C.    Judgment for all costs and attorneys fees; and

D.    Such further relief as is equitable and just.

## COUNT V

### BREACH OF CONTRACT AGAINST EPD INVESTMENT COMPANY BY PLAINTIFF LESLIE HUERTH

139.    Paragraphs 1-138 of this Complaint are re-stated and re-alleged here as this paragraph 139.

140.    Under the terms of the Notes, there is no stated term no other restriction on the bearer's ability to demand repayment of principal .

141.    The Note is designated as due "On Demand."

142.    The Note provides that if the bearer commences collection proceedings, EPD promises to pay such additional sums as the Court may adjudge to be reasonable attorneys fees.

143. The amount due and owing to Leslie for principal and interest as of June 30, 2010 is $18,041.00

144. Demand has been made for payment and no payment has been received. See Exhibit E.

145. Leslie has fully complied with all of the requirements of the contract. Under the terms of this Note Leslie is entitled to attorneys fees and costs of collection.

WHEREFORE, Leslie Huerth prays that this Court enter an order granting her:

A. Judgment in their favor and against Jerrold Pressman in the amount of $18,041.00;

B. Judgment for additional interest and fees through the date of judgment;

C. Judgment for all costs and attorneys fees; and

D. Such further relief as is equitable and just.

## COUNT VI

## BREACH OF LEASE AGAINST TRUE POSITION TECHNOLOGIES, INC. BY AJ PARTNERS AND ART AND JOAN HUERTH

146. Paragraphs 1- 145 of this Complaint are re-stated and re-alleged here as this paragraph 146.

147. Defendant True Position Technologies, Inc. ("True Position") is a California corporation owned and controlled by Pressman.

148. True position executed an Equipment Lease Agreement known as Lease No. L040823-HFL, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

149. Under the terms of the equipment lease, True Position agreed to pay to Huerth Financial Leasing $2,486.20 for 42 months.

150.     The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

151.     In view of Pressman's ownership of True Position and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

152.     True Position is in default under the terms of the lease.

153.     Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $91,989.40 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth and Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A.     Judgment in their favor and against True Position Technologies, Inc. in the amount of $91,989.40 plus late payment penalties, costs of collection and attorneys fees.

B.     such further relief as the court finds equitable and just.

## COUNT VII

### BREACH OF LEASE AGAINST S.C. CLUB, L.P. AND BY ART AND JOAN HUERTH D/B/A HUERTH FINANCIAL LEASING

154.     Paragraphs 1-153 of this Complaint are re-stated and re-alleged here as this paragraph 154.

155.    Defendant S.C. Club, L.P. ("S.C. Club") is a California limited partnership owned and controlled by Pressman.

156.    S.C. Club executed an Equipment Lease Agreement known as Lease No. L040823-HFL-2, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

157.    Under the terms of the equipment lease, S.C. Club agreed to pay to Huerth Financial Leasing $248.50 for 42 months.

158.    The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-2 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

159.    In view of Pressman's ownership of S.C. Club and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

160.    S.C. Club is in default under the terms of the lease.

161.    Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $9,194.50 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth, Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A.    Judgment in their favor and against S.C. Club, L.P. in the amount of $9,194.50 plus late payment penalties, costs of collection and attorneys fees.

B.      such further relief as the court finds equitable and just.

## COUNT VIII

### BREACH OF LEASE
### AGAINST ICE SKATING ENTERPRISES, INC.
### BY ART AND JOAN HUERTH DBA HUERTH FINANCIAL LEASING

162.    Paragraphs 1-161 of this Complaint are re-stated and re-alleged here as this paragraph 162.

163.    Defendant Ice Skating Enterprises, Inc. ("Ice Skating") is a California corporation owned and controlled by Pressman.

164.    Ice Skating executed an Equipment Lease Agreement known as Lease No. L040823-HFL-3, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

165.    Under the terms of the equipment lease, Ice Skating agreed to pay to Huerth Financial Leasing $325.00 for 42 months.

166.    The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-3 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. …"

167.    In view of Pressman's ownership of Ice Skating and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

168.    Ice Skating is in default under the terms of the lease.

169.     Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $12,025.00 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE Arthur Huerth and Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A.     Judgment in their favor and against Ice Skating Enterprises, Inc. in the amount of $12,025.00 plus late payment penalties, costs of collection and attorneys fees.

B.     such further relief as the court finds equitable and just.

## COUNT IX

**BREACH OF LEASE AGAINST TRUE POSITION TECHNOLOGIES, INC.
BY ART AND JOAN HUERTH DBA HUERTH FINANCIAL LEASING**

170.     Paragraphs 1 through 169 of this Complaint are re-stated and re-alleged here as this paragraph 170.

171.     True Position executed an Equipment Lease Agreement known as Lease No. L040823-HFL-4, as lessee, with lessor Huerth Financial Leasing dated August 8, 2004. A copy of the lease is included in group Exhibit C.

172.     Under the terms of the equipment lease, True Position agreed to pay to Huerth Financial Leasing $940.30 for 42 months.

173.     The terms of the Continuing Guaranty executed by Jerrold S. Pressman on October 18, 2004 in consideration of the execution of Lease No. L040823-HFL-4 included the following language:

> "As a material part of this Guaranty, upon the termination of the first 42-
> month Lease, Pressman agrees to furnish a new Lease to Lessor that leases the

same equipment memorialized in the above Lease for a period of no less than 42 additional months under the same terms and conditions. ..."

174.     In view of Pressman's ownership of True Position and his continuation of lease payments until June 2009, the lease renewed and Pressman is estopped to claim that the lease did not renew for a second 42-month term.

175.     True Position is in default under the terms of the lease.

176.     Under the terms of the lease all rental for the remainder of the term is due and owing, including 37 months of rent or $34,791.10 plus late payment penalties, cost of collection and attorneys fees.

WHEREFORE, Arthur Huerth, Joan Huerth individually and dba Huerth Financial Leasing pray that this Court enter:

A.     Judgment in their favor and against True Position Technologies, Inc. in the amount of $34,791.10 plus late payment penalties, costs of collection and attorneys fees.

B.     such further relief as the court finds equitable and just..

## COUNT X

### ENFORCEMENT OF GUARANTIES
### AGAINST JERROLD PRESSMAN BY ART AND JOAN HUERTH
### DBA HUERTH FINANCIAL LEASING AND AJ PARTNERS

177.     Paragraphs 1-176 of this Complaint are re-stated and re-alleged here as this paragraph 177.

178.     The amounts now due  and owing under each equipment lease are as follows:

Lease #L040823-HFL          $91,989.40

Lease #L040823-HFL-2       $9,194.50

Lease #L040823-HFL-3    $12,025.00

Lease #L040823-HFL-4    <u>$34,791.10</u>

Total            $148,000.00

179.     Under the terms of the guaranties, Pressman is responsible for payment of all sums due under the leases including costs and attorneys fees.

180.     Written notice of default has been served upon the lessees.

181.     Under the terms of the guaranties Pressman has waived demand.

WHEREFORE, Arthur Huerth and Joan Huerth d/b/a/ Huerth Financial Leasing pray that this Court:

A.     Grant judgment in their favor and against Jerrold Pressman under the terms of the guaranties in the amount of $148,000.00 plus costs and attorneys fees;

B.     such further relief as this Court deems equitable and just.

## COUNT XI

### COMMON LAW FRAUD AGAINST JERROLD PRESSMAN BY PLAINTIFFS ARTHUR HUERTH AND JOAN HUERTH AND AJ PARTNERS

182.     Paragraphs 1-181 of this Complaint are re-stated and re-alleged here as this paragraph 181.

183.     Art and Joan met Defendant Pressman in 2000.

184.     Pressman represented himself to be a financial consultant, advisor, and tax expert. Pressman is not a licensed attorney or certified public accountant.

185.     Pressman made false statements of material fact to Art and Joan, including but not limited to statements:

a.     That their investment would be a loan and would pay regular interest at higher than market rates;

b.      That the demand feature of the loan would be honored because EPD had sufficient assets, and Art and Joan would receive back their principal invested at any time upon demand;

c.      That their retirement assets would be safely invested in EPD or other Pressman investments;

d.      That it was reasonable and customary for EPD to be owner of the leased equipment at the end of the lease.

186.    Pressman's false statements included the following omissions:

a.      Omission to give full and accurate information pertaining to the investment of the invested funds and the risks involved as required by state and federal securities laws;

b.      Omission to explain the ramifications of registering the assumed name Huerth Financial Leasing in Florida;

c.      Omission to request Art and Joan's authority and permission to form a partnership and to obtain an employer identification number for the entity;

187.    Pressman knew that the statements were false, and that, in fact, he would use Art and Joan's investment of principal to pay them and other investors monthly sums, in effect, upon information and belief, a *Ponzi* scheme.

188.    Pressman intended that the false statements and omissions would induce Art and Joan to invest large sums of money according to his direction.

189.    Art and Joan reasonably relied upon the truth of Pressman's statements in their decision to invest as Pressman directed.

190.    Pressman's conduct was willful and wanton, in that he extracted Art and Joan's life savings including their retirement savings for his fraudulent scheme.

191.    As a direct and proximate cause of Art and Joan having suffered damages resulting from their reliance on Pressman's statements, including the loss of their $1,556,807.00   principal investment, the loss of the promised return,   the lost opportunity to invest in other investments, the costs associated with transferring accounts to EPD, and the costs and attorneys fees associated with their pursuit of the refund of their money, including the costs and fees associated with this lawsuit.
plus late payment penalties, costs of collection and attorneys fees.

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting them:

A.    judgment in their favor and against Jerrold Pressman in the amount of $1,556,807.00, plus punitive damages, costs and attorneys fees.

B.    such further relief as this Court deems equitable and just.

## COUNT XI

## COMMON LAW FRAUD AGAINST JERROLD PRESSMAN BY PLAINTIFF LESLIE HUERTH\

192.    Paragraphs 1- 191 of this Complaint are re-stated and re-alleged here as this paragraph 192.

193.    Pressman represented himself to be a financial consultant, advisor, and tax expert.  Pressman is not a licensed attorney or certified public accountant.

194.    Pressman made false statements of material fact to Art, Joan and Leslie including but not limited to statements:

a.  That her investment would be a loan and would pay regular interest at higher than market rates;

b.  That the demand feature of the loan would be honored because EPD had sufficient assets, and Leslie would receive back her principal invested at any time upon demand.

195.  Pressman's false statements included the omission to give full and accurate information pertaining to the investment of the invested funds and the risks involved as required by state and federal securities laws.

196.  Pressman knew that the statements were false, and that, in fact, he would use Leslie's investment of principal to pay her and other investors monthly sums, in effect, upon in formation and belief, a *Ponzi* scheme.

197.  Pressman intended that the statements would induce Leslie to invest large sums of money according to his direction.

198.  Leslie reasonably relied upon the truth of Pressman's statements in her decision to invest as Pressman directed.

199.  Pressman's conduct was willful and wanton, in that he extracted significant funds from Leslie for his fraudulent scheme.

200.  Leslie has suffered damages resulting from her reliance on Pressman's statements, including the loss of her $10,000.00 principal investment, the loss of the promised return, the lost opportunity to invest in other investments, and the costs and attorneys fees associated with her pursuit of the refund of her money, including the costs and fees associated with this lawsuit.

WHEREFORE, Leslie Huerth prays this honorable Court enter an order granting her:

A.      judgment in her favor and against Jerrold Pressman in the amount of $18,000.00, plus punitive damages, costs and attorneys fees.

B.      such further relief as this Court deems equitable and just.

## COUNT XII

## NEGLIGENCE-ACCOUNTING MALPRACTICE AGAINST THEODORE  JONAVIC

201.      Paragraphs 1-200 of this Complaint are re-stated and re-alleged here as this paragraph 201.

202.      In  2004 and 2005 Pressman urged the use of accountant Theodore Jonavic to Art and Joan for the preparation of their tax returns.

203.      Art and Joan, in reliance on the advice of Pressman, hired Jonavic to prepare their income tax returns from 2004 through 2008.

204.      As a certified public accountant, Jonavic had certain duties to Art and Joan including:

a.      A duty to use reasonable care in advising his clients in accounting matters;

b.      A duty to use reasonable care in the preparation of tax returns for his clients, and to ascertain the clients' wishes regarding risky or uncertain tax positions;

c.      A duty to prepare the tax returns of the client applying the standard of care for accountants and GAAP principles; and

d.     A duty to use reasonable care in performing due diligence for the client with regard to their EPD investments.

205.     Jonavic breached the duties owed to Art and Joan in at least the following ways:

a.     Jonavic failed to advise Art and Joan that certain positions taken on their income tax returns were likely to be questioned or disallowed by the I.R.S.;

b.     Jonavic prepared income tax returns for Art and Joan with errors, or with positions unlikely to be accepted by the I.R.S., such as claiming a home-office deduction, without prior consultation with Art and Joan, and with knowledge that certain positions were inaccurate;

c.     Jonavic acted at the direction of Pressman, and not in the best interests of Art and Joan, which is a violation of his duty of independence and to avoid conflicts of interest;

d.     Jonavic participated in the creation of phantom entities on behalf of Art and Joan;

e.     Jonavic did not give Art and Joan any independent advice about the tax strategy of creating phantom entities to lease phantom or unidentified equipment, especially when there was no indicia of ownership by the Huerth Financial Leasing, AJ Partners or Art and Joan;

f.        Jonavic ignored "red flags" in the EPD investments that obligated him to conduct further investigation and due diligence for his clients invested in EPD; and

g.        Otherwise failing to accounting advice that meets the standard of care of a certified public accountant.

206.    Had Jonavic not breached his duties to Art and Joan, their losses would not have occurred, or would have been minimized.

207.    Art and Joan were injured by Jonavic in that they underwent an audit for their income tax returns for 2004 and 2005, which procedure was emotional, time-consuming and expensive, and which resulted in the imposition of $37,752.41 in additional taxes, interest and penalties.

208.    Jonavic's breach was the proximate cause of the injury.

WHEREFORE, Art and Joan pray this honorable Court enter an order granting them:

A.        judgment in her favor and against Jonavic in the amount of $80,000.00, plus punitive damages, costs and attorneys fees.

B.        such further relief as this Court deems equitable and just.

## COUNT XIII

### CONSUMER FRAUD AGAINST JERROLD PRESSMAN, THEODORE JONAVIC, KATHERINE WERNER AND RUBEN MORENO BY ALL PLAINTIFFS

209.    Paragraphs 1 through 208 of this Complaint are re-stated and re-alleged here as this paragraph 209.

210.     At all relevant times herein there was in effect in Illinois a statute known as the Consumer Fraud and Deceptive Business Practices Act, which provides at section 2:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act. 815 ILCS 505/2) (from Ch. 121 1/2, par. 262.)"

211.     The allegations set forth in Count I, Count II, Count III, Count XI, paragraph 98 herein constitute violations of the Illinois Consumer Fraud Act.

212.     The conduct engaged in was willful or intentional and done with intent that Plaintiffs rely upon the misrepresentations, concealed facts, and the deceptive practices of the Defendants in making and continuing their investment in EPD. The Plaintiffs suffered actual damages due to Pressman's violations.

213.     Based upon the conduct of Defendants, Plaintiffs are entitled to punitive damages, costs and attorneys fees.

WHEREFORE, Huerths pray that this honorable Court:

A.     Grant judgment in their favor and against Defendants in the amount of $1,556,807.00 for Art and Joan, and $18,000.00 for Leslie, judgment for punitive damages three times actual damages, costs and attorneys fees,

B.     plus such other and further relief as this Court deems equitable and just.

## COUNT XIV

### FRAUDULENT CONCEALMENT AGAINST JERROLD PRESSMAN, KATHERINE WERNER AND RUBEN MORENO BY ALL PLAINTIFFS

214.    Paragraphs 1 through 213 of this Complaint are re-stated and re-alleged here as this paragraph 214.

215.    At all times herein, Huerths reposed their trust and confidence in Defendant Pressman.

216.    Since June of 2009, when monthly payments to Art, Joan and Leslie ended, Huerths have made diligent inquiry to Pressman about why they were not receiving payments.

217.    As demonstrated by the emails attached in Group Exhibit F, Pressman and his staff have proffered a wide variety of excuses about why they are unable to make payments, and have done all things necessary to engender a sense of security in Art and Joan that payments would be forthcoming so that they would not take legal action.

218.    The representations made by Pressman and his representatives in Exhibit F and paragraph 98 hereof were untrue.

219.    The conduct of Pressman, Werner, Moreno and their staff is active fraudulent concealment.  By their actions, Defendants have caused Art, Joan and Leslie to hold their positions; further, on information and belief, during the past twelve months or more, Pressman has dissipated his assets and the assets of EPD previously available to repay claims.

220.    As a direct and proximate result of Defendants' actions Plaintiffs have been injured.

WHEREFORE  Plaintiffs pray that the Court order:

A.    Defendants to account for all assets dissipated since June of 2009

B.    For judgment in the amount of $1,556,807.00 plus punitive damages, costs and attorneys fees,

C.    And such other and further relief as this Court deems just.

## COUNT XV

## BREACH OF FIDUCIARY DUTY AGAINST JERROLD PRESSMAN

221.    Paragraphs 1 through 220 of this Complaint are re-stated and re-alleged here as this paragraph 221.

222.    At all times herein Pressman had a fiduciary duty to Huerths.

223.    The Huerths reposed trust and confidence in Pressman.

224.    Pressman has violated his fiduciary duties to the Huerths in one or more of the following ways:

a.    Failure to fully disclose the investment risks for the funds solicited from the Huerths;

b.    Acting to involve the Huerths unwittingly  in asserting tax positions that were legally unsupported;

c.    Holding himself out as a tax expert;

d.    Persuading the Huerths that he had superior knowledge of the tax laws that would allow them to save money on tax liabilities;

e.    Failure to account for the monies lent and why they cannot be re-paid;

f.      Failure to account for the equipment purportedly purchased with the Huerths' money, or the related leases;

225.    As a direct and proximate cause of Pressman's breach of fiduciary duty, the Huerths have been damaged in an undetermined amount exceeding $1,000,000.00

WHEREFORE, Arthur Huerth, Joan Huerth and Leslie Huerth pray that this honorable court enter an order granting:

A.      judgment in their favor and against Pressman in an amount exceeding $1,000,000.000 plus punitive damages, plus costs and fees, and

B.      such other and further relief as the court deems just.

## COUNT XVI

## BREACH OF FIDUCIARY DUTY AGAINST THEODORE JONAVIC BY ART AND JOAN

226.    Paragraphs 1 through 225 of this Complaint are re-stated and re-alleged here as this paragraph 226.

227.    At all times herein Jonavic, as a registered representative, securities broker and certified public accountant, had a fiduciary duty to Art and Joan.

228.    Art and Joan reposed trust and confidence in Jonavic.

229.    At Pressman's request, Jonavic was given a power of attorney from Art and Joan to handle all of their tax matters.

230.    Jonavic has violated his fiduciary duties to Art and Joan in one or more of the following ways:

a. Acting to involve the Huerths unwittingly in asserting tax positions that were created by Pressman but were legally unsupported;

43

b. Repeatedly refusing to communicate with the Huerths regarding tax and accounting positions taken on their behalf;

c. Failure to disclose his relationship with Pressman and the conflict of interest resulting from that relationship;

d. Continuing failure to warn the Huerths that the investments in EPD were posing substantial risks to Huerth's financial health, especially the investment of their entire IRA account;

e. Failure to fully explain to Art and Joan that fictitious names and a partnership entity were created and used for them; and a failure to inform Art and Joan of the tax and legal consequences of operating in partnership form or under an assumed name;

f. Failure to keep Art and Joan fully informed about the progress of the audit;

g. Advising Art and Joan that the tax case was settled to avoid the possibility that the IRS would pursue claims against Art and Joan's children when, in fact, the case was not settled, it was decided in the tax court, and there was no real risk of the IRS pursuing the children of Art or Joan.

h. Generally failing to protect the financial interest of Art and Joan.

231.     As a direct and proximate cause of Jonavic's breach of fiduciary duties, AJ Partners, Art and Joan have been damaged in an undetermined amount exceeding $1,000,000.00

WHEREFORE, Arthur Huerth and Joan Huerth pray that this Court enter an order granting:

A.     judgment in their favor and against Jonavic in an amount exceeding $1,000,000.000 plus punitive damages, plus costs and attorneys fees,

B.     plus such other and further relief as the court deems just.

## COUNT XVII

## ALTER EGO AGAINST JERROLD PRESSMAN

232.     Paragraphs 1 through 231 of this Complaint are re-stated and re-alleged here as this paragraph 232.

233.     Pressman has treated EPD as his "alter ego," rather than as a separate entity in the following ways:

a. Pressman acted in bad faith in fraudulently inducing the Huerths to invest money in EPD and then using that money for other enterprises;

b. Pressman has used a series of corporate and LLC entities as a shield against personal liability;

c. Pressman has diverted assets from entity to entity to the detriment of creditors and investors;

d. EPD is wholly owned by Pressman;

e.   Pressman and EPD used the same office or business location;

f.   Pressman and EPD have employed the same attorney and accountant;

g.   Pressman used EPD to procure capital, labor, services and/or merchandise for himself and for other entities owned by him;

h.   EPD was not adequately capitalized;

i.   On information and belief, EPD failed to maintain minutes or adequate corporate records.

234.     Upholding the EPD entity distinction and allowing for the owner/member to escape  personal liability for entity debts to Plaintiffs would sanction a fraud or promote an injustice and would be inequitable in that Pressman would avoid the financial consequences of his wrongful actions.

WHEREFORE, Plaintiffs request that all judgments entered herein against EPD Leasing Co., LLC, EPD Group, True Positions Technologies, Ice Skating Enterprises and S.C. Club, L.P. be entered as personal judgments against Jerrold Pressman.

**COUNT XVIII**

**SUCCESSOR LIABILITY AGAINST
EPD INVESTMENT LEASING CO LLC**

235.     Paragraphs 1 through 234 of this Complaint are re-stated and re-alleged here as this paragraph 235.

236.     Pressman was the owner and director, officer or managing member of EPD and is the owner and director, officer or managing partner of EPD Investment Leasing Co, LLC ("EILC").

237.     On information and belief, EILC purchased some or all of the assets or membership interests of EPD.

238.     On information and belief, inadequate consideration was paid by EILC for EPD assets.

239.     EILC operates with the same personnel, management, physical location and general business operations as EPD.

240.     Both EPD and EILC use the assumed name "EPD Group."

241.     Pressman's formation of the EILC entity occurred in May, 2010, during the pendency of Plaintiffs' inquiries and demands for repayment under the notes, leases and guaranties of Pressman.

242.     Pressman intended to hinder, delay or defraud Plaintiffs and EPD's other creditors with the formation of EILC and the sale of EPD assets to the new entity.

243.     EPD is unable to pay its liabilities.

244.     EILC is liable for all claims of Plaintiffs against EPD because EILC's formation was:

    a) a de facto merger or consolidation with EPD;

    b) a mere continuation of EPD; and / or

    c) a violation of Cal. Civ. Code §3439.04 (The Uniform Fraudulent Transfer Act) in that the transfer made by EPD to EILC is fraudulent as to a

Plaintiffs as EPD made the transfer as with actual intent to hinder, delay, or defraud Plaintiffs.

WHEREFORE, Plaintiffs request that all judgments entered herein against EPD Investment Co., LLC or EPD Group, be entered as judgments against EPD Investment Leasing Co., LLC.

Respectfully submitted,

Plaintiffs, Arthur Huerth, Joan Huerth, individually and d/b/a/ Huerth Financial Leasing, AJ Partners, and Leslie Huerth

By: /s/ Sara E. Cook

Sara E. Cook
ARDC 03126995
scook@mckenna-law.com
Patricia C. Kraft
ARDC 6190990
pkraft@mckenna-law.com
McKenna Storer
666 Russel Ct., Ste 303
Woodstock, IL 60098(815) 334-9692